## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> JUAN MANUEL ) <br> BARENAS-REYNOSO, ) <br> ) <br> Defendant. ) | Case No. 19-cr-351-8 <br><br> Judge Sharon Johnson Coleman |

**MEMORANDUM OPINION AND ORDER**

Defendant, Juan Manuel Barenas-Reynoso ("Barenas"), was charged with drug-related offenses and being a felon in possession of a firearm in a July 2019 indictment. Before the Court is defendant's motion to suppress evidence and statements obtained during the search of his residence on April 25, 2019. For the following reasons, the Court denies defendant's motion [233].[1]

**Background**

On April 25, 2019, law enforcement agents commenced a surveillance of Barenas with the plan of arresting him on an arrest warrant. Government witnesses testified at the motion to suppress hearing that Barenas was observed leaving his residence on the 4300 block of North Monticello Street in Chicago, Illinois with his 7-year old daughter. As defendant drove away from his residence, the agents activated their vehicles' emergency equipment to effectuate a stop a few houses down from Barenas' residence. There were approximately ten agents, including Drug Enforcement Administration Special Agent Tim Jennings and Task Force Officer Chris Chmelar, present at the time. Agent Jennings testified that as he approached defendant's vehicle, he had

---

[1] During the suppression hearing held on June 2, 2021, defendant conceded that the arrest warrant was valid and withdrew its previous challenge. Accordingly, the only issues in dispute is whether there was consent and whether that consent was knowingly voluntary.

1

drawn his gun because Barenas attempted to continue driving. Agent Jennings then instructed Barenas to exit the vehicle and he placed Barenas in handcuffs and read his *Miranda* warnings. Agent Jennings testified that he asked Barenas for permission to search his residence and Barenas answered affirmatively. Officer Chmelar's testimony generally corroborated Agent Jennings' testimony that Barenas gave oral consent to search his residence. Barenas, however, testified that he did not consent to a search of his residence. It is undisputed that all of the conversations between Barenas and the officers on the scene was primarily in the English language although Barenas relied on an interpreter at the hearing.

Agent Jennings testified that after providing oral consent, Barenas stated, "I'm fucked. Help me out." Agent Jennings explained that he understood Barenas' statement to mean that he knew he was in trouble and that he wished to cooperate with law enforcement. Officer Chmelar also testified that he perceived that Barenas desired to cooperate. After Barenas provided oral consent, the agents accompanied Barenas and his daughter to his residence. Barenas and approximately five agents, including Agent Jennings and Officer Chmelar, entered the residence. Barenas' daughter stayed outside with a female agent up until the time she was released to the custody of a family member. Upon entering the residence, Barenas was seated at the kitchen table and his handcuffs were removed. Agent Jennings testified that Barenas then signed a written consent, which Agent Jennings explained to Barenas was for the purpose of memorializing the oral consent that he had previously given to search his residence. During the search, phones were discovered, and subsequent consent was solicited from Barenas to search those items. Barenas signed his initials by each device listed on the written consent form as acknowledgment of his consent. Once again, all of the communications (oral and written) were primarily in English. Agent Jennings testified that he did not use Spanish when speaking to Barenas because he knew that Barenas spoke English. Barenas admitted in court

that he does speak some English. There was no substantial argument that Barenas failed to understand his encounter with the agents.

During the search, the agents found a ledger, narcotics, packaging materials, a digital scale, keys, several phones, and a firearm. In addition, defendant made statements to the agents relating to the items found in the house and Barenas' involvement in a narcotics operation. This is the evidence Barenas seeks to suppress.

**Legal Standard**

The Fourth Amendment protects citizens against unreasonable searches and seizures. *See Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Law enforcement officers may, however, legally search a property without a warrant if they obtain voluntary consent from the owner or from someone with actual or apparent authority over the premises. *United States v. Gevedon*, 214 F.3d 807, 810 (7th Cir. 2000). The government bears the burden of showing, by a preponderance of the evidence, that they obtained consent to search. *United States v. Basinski*, 226 F.3d 829, 833 (7th Cir. 2000).

**Analysis**

*Consent to Search*

Barenas argues that the agents searched his residence without obtaining his consent to do so. In an effort to meet its burden, the government has presented witness testimony of Agent Jennings and Officer Chmelar who both confirmed that Barenas provided oral consent to search his residence. The government also presented a written consent form that was signed by Barenas. Both agents testified that once they entered the residence, Barenas signed a written consent to memorialize his oral consent. Barenas admits to signing the written consent. He, however, contends that he did not know he was providing consent to search his residence. He further argues

that the agents did not present the consent to search form to him until after the search had been completed.

Initially, the written consent form is merely corroboration of the oral consent and was not necessary to conduct the search once Barenas gave oral consent. Thus, the Court's analysis does not substantially change given Barenas' arguments as to the timing of the written consent being after the search began. Indeed, even if he had refused to sign a written consent, that would not have vitiated his oral consent. *See United States v. Thurman*, 889 F.3d 356, 366 (7th Cir.), cert. denied, 139 S. Ct. 278, 202 L. Ed. 2d 184 (2018) (collecting cases affirming findings of consent despite a defendant's documented refusal to sign a form).

Moreover, the Court questions the veracity of defendant's account of events in light of the inconsistent statements made in his motion to suppress and during the motion to suppress hearing. In defendant's motion to suppress, Barenas stated that "he never consented to the agents' entry or search of the apartment or phones" and "he did not understand the form to be a consent to search." (Def.'s Mot. to Sup. at 3). Contrarily, Barenas testified that Agent Jennings explained that the form was for the purposes of unlocking the phones, so that Agent Jennings could check them. With that understanding, Barenas initialed next to each device signifying his consent to the search. Based on defendant's own testimony, he, at the very least, understood that the form was for the purpose of providing the agents consent to search his phones, and he agreed. The Court finds it hard to believe that defendant would freely consent to a search of his phones, which is arguably more intrusive than a search of his residence, but not consent to a search of his residence. Furthermore the consent form named the address above the individual items with Barenas fully signing the form at the bottom.

The defense also argued that Barenas' alleged statement to Agent Jennings that "I'm fucked. Help me out" was not consent to search his residence. Nonetheless, having viewed the demeanor of

4

the witnesses and thoroughly examined their testimony, the Court chooses to believe Agent Jennings and Officer Chmelar who testified that defendant affirmatively provided oral consent to the search separate from this statement. *See United States v. Punzo*, 208 F. App'x 468, 471 (7th Cir. 2006) (explaining that the district court is in the best position to judge credibility of a witness' testimony). Next, the Court will analyze whether that consent was knowing and voluntary.

*Knowing and Voluntary Consent*

Barenas also argues that consent, if given, could not have been knowing and voluntary because (1) the agents communicated with him in English, not his native language, Spanish, (2) the presence of his daughter, and (3) his immigration status. Consent to search is valid only if the consent was freely and voluntarily given. *United States v. Evans*, 27 F.3d 1219, 1230 (7th Cir. 1994). The question of whether consent was freely and voluntarily given is a question of fact to be determined from the totality of circumstances. *Id.* When a defendant claims that he was coerced into consenting, the government bears the burden of proving otherwise by a preponderance of the evidence. *See United States v. Hicks* (*Hicks II*), 650 F.3d 1058, 1064 (7th Cir. 2011). The Court considers the following factors in assessing whether the totality of the circumstances support a finding of voluntary consent: "(1) the age, education, and intelligence of the defendant; (2) whether he was advised of his constitutional rights; (3) how long he was detained before consenting; (4) whether he consented immediately or was prompted by repeated requests; (5) whether physical coercion was used; and (6) whether he was in custody when he consented." *Thurman*, 889 F.3d at 367 (internal citation omitted).

First, although Barenas' native language is Spanish, nothing in the record leads this Court to believe that he did not understand the agents communicating with him or the written consent form that he signed. Barenas admitted that he speaks English, albeit he prefers a translator for legal matters. He further testified that he and Agent Jennings engaged in conversations regarding the

5

consent form, the items found in the house, and his involvement in the drug organization, which were in English. At no point did Barenas request a translator or mention that he did not comprehend. In fact, Agent Jennings and Officer Chelmer testified that they had previously interacted with Barenas in 2017 where the defendant spoke to them in English. They further testified that Barenas appeared to comprehend what was being communicated to him and that there was no indication that a translator may be needed.

Second, there is nothing in the record that suggests the presence of Barenas' daughter or his immigration status affected his ability to knowingly and voluntarily consent. Officer Chelmer testified that Barenas' daughter was outside of the residence in the care of a female agent until she was released to an adult. The time of the encounter was during daylight and did not appear to be lengthy, according to testimony. Chelmer further testified that Barenas' immigration status was not discussed.

Moreover, other factors favor a finding that Barenas' consent was knowing and voluntary. Nothing in the record suggests that his age at the time (forty-three), education (secondary school level), or intelligence rendered him unable to understand or comprehend the questions regarding consent. *See United States v. Richards*, 741 F.3d 843, 849 (7th Cir. 2014) (affirming a finding of voluntary consent when there was no evidence that defendant suffered from a diagnosed mental disability or that officers had any reason to believe that he could not consent to the search of his home). Further, the length of defendant's detention was not unreasonable as the evidence shows he provided his consent within minutes of being taken into custody. To the extent that Barenas argues that his consent was not knowing and voluntary because the agents were armed, the Court rejects his argument because there is no evidence that the agents used their weapons to coerce consent. *See United States v. Jackson*, 901 F.2d 83, 84 (7th Cir. 1990) (fact that officers were armed at the time consent was provided does not nullify the possibility that consent was voluntary).

Based on the evidence and testimony presented, the Court finds that Barenas' consent to search his residence was knowing and voluntary and therefore form a legal basis for the agents' warrantless search of his residence.

**Conclusion**

For the foregoing reasons, the Court denies Barenas' motion to suppress the evidence recovered from his residence on April 25, 2019 [233].

IT IS SO ORDERED.

Date: 6/21/2021

Entered: _____
SHARON JOHNSON COLEMAN
United States District Court Judge